**No. 23-12854-G**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

_____

T. MUELLER,

*Plaintiff-Appellant,*

v.

WALMART CORPORATION, et al.,

*Defendants-Appellees.*

_____

On Appeal from the United States District Court
for the Northern District of Georgia

_____

**PRINCIPAL BRIEF OF APPELLANT**

_____

T. MUELLER
 *Plaintiff-Appellant*
 *Post Office Box 13231*
 *Atlanta, Ga  30324*
 *tmichaelmueller112@gmail.com*
 *(646) 265-4402*

Mueller v. Walmart, 23-12854-G

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Appellant certifies that the following listed persons and entities have an interest in the outcome of this case.

1.    Plaintiff-Appellant: Todd Mueller.

2.    Defendants-Appellees:  Brandon Burston, Walmart Stores East, LP, known for purposes of this appeal as Walmart Corporation.

3.    Counsel for Defendants-Appellees:  Leslie Becknell, Joi Siler-King

C1 OF 1

# STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument pursuant to Federal Rule of Appellate Procedure 34(a)(1) and Rule 28-1(c) of the eleventh Circuit Rules, as he believes oral argument will aid in the decisional process.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS………………………………. C1

STATEMENT REGARDING ORAL ARGUMENT …………………...……    i

TABLE OF CONTENTS ………………..…………………………...…    ii

TABLE OF AUTHORITIES    ………………..…………………...……    iv

JURISDICTIONAL STATEMENT …………………………..…….…    1

ISSUES PRESENTED  ……………………………………………….    1

STATEMENT OF THE CASE ………………………………………...    2

     Events Giving Rise to the Complaint ……………………………    2
     The Georgia State Prosecution  …………………………………….    3
     District Court Proceedings  …………………………………...    5

SUMMARY OF ARGUMENT  ………………………………………..    9

ARGUMENT  …………………………………………………………..10

    I.    **THE DISTRICT COURT ERRED BY ASSERTING THAT
          IT LACKED DIVERSITY JURISDICTION TO ADJUDICATE
          ONE OF APPELLANT'S TWO INTERRELATED AND
          EXCLUSIVE STATE-BASED CLAIMS** …………………..10

    II.   **THE DISTRICT COURT ERRED TO THE EXTENT IT
          DETERMINED THAT IT HAD FEDERAL QUESTION
          JURISDICTION UNDER 28 U.S.C. §1331** …………………..……18

**III.    THE DISTRICT COURT ERRED IN FINDING THAT THE DISMISSAL OF THE CRIMINAL CHARGE UNDERLYING APPELLANT'S STATE BASED CLAIM OF MALICIOUS PROSECUTION WAS MADE PURSUANT TO A PLEA AGREEMENT AND THAT APPELLEE'S WERE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW** ……….. 21

CONCLUSION ……………………………………………………… 34

CERTIFICATE OF COMPLIANCE ………………………………… 35

CERTIFICATE OF SERVICE  ……………………………………… 36

# TABLE OF AUTHORITIES

## Cases

*Ambrosia Coal Co. v. Pages Morales*, 482 F.3d 1309 (11th Cir. 2007) ………    11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ……………………22, 33

*Arthur v. Allen*, 452 F.3d 1234 (11th Cir. 2006) ………………………….......... 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ……………………………………….    19

*Brooks v. Boykin*, 194 Ga.App. 854 (1990) ……………………………………    24

*Butler v. Bolton Road Partners*, 222 Ga.App. 791 (1996) …………………….    24

*Day v. McDonough*, 547 U.S. 198 (2006) …………………………………...    17

*Hedge Capital Investments Ltd. v. Sustainable Growth*

  *Group Holdings LLC*, 593 F.App'x 937(11th Cir. 2014) …………………    14

*Hudson Ins. Co. v. Am. Elec. Corp.*, 957 F.2d 826 (11th Cir. 1992) ……………    19

*Kaufman v. W. Union Tel. Co.*, 224 F.2d 723 (5th Cir. 1955) ………………..    13

*Kyles v. State*, 254 Ga. 49 (1985) ……………………………………………    29

*Lopez v. Target Corp.*, 676 F.3d 1230 (2012) ………………………………….    06

*McArthur v. Kerzner Int'l Bahamas*, 607 F. App'x 845 (11th Cir. 2015) ………    15

*McIntosh v. Royal Carib. Cruises, Ltd.*, 5 F.4th 1309 (11th Cir. 2021) ………..    17

*McIntyre v. State*, 189 Ga.App. 764 (1989) ………………………………….    28

*Moore v. Coats Co.*, 270 F.2d 410 (3rd Cir. 1959) ………………………….…    15

*Molinos Valle Del Cibao v. Lama*, 633 F.3d 1330 (11th Cir. 2011) ………….. 14, 15

*Owusu-Ansah v. Coca-Cola*, 715 F.3d 1306 (11th Cir. 2013) …………………. 22

People v. DeBlieck, 181 Ill.App.3d 600 (1989) ……………………………….. 29

*Prophecy v. Rossignol*, 256 Ga. 27 (1985)  …………………………………… 06

*Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269 (11th Cir. 2010) …………….. 21

*Scala v. City of Winter Park*, 116 F.3d 1396 (11th Cir. 1997) ……………….. 22

*Sherrill v. Stockel*, 557 S.E.2d 8 (Ga.Ct.App. 2001) ……………………….… 23

*State v. Davis*, 196 Ga.App. 785 (1990) ……………………………………... 29

*State v. McManus*, 224 Ga.App. 450 (1997) ………………………………… 29

*State v. Sheahan*, 217 Ga.App. 26 (1995) …………………………………… 29

*Sun Printing Publishing Assn v. Edwards*, 194 U.S. 377 (1904) ……………. 14

*Syms v. State*, 331 Ga.App. 225 (2015) ……………………………………… 25

*Talavera v. School Bd. Of Palm Beach*, 129 F.3d 1214 (11th Cir. 1997) ……… 22

*Taylor v. Appleton*, 30 F.3d 1365 (11th Cir. 1994) …………………………… 16

*Travaglio v. Am. Express Co.*, 735 F.3d 1266 (11th Cir. 2013) ……………… 14

*Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284 (11th Cir. 1998) ………… 12

*United States v. Iguaran*, 821 F.3d 1335 (11th Cir. 2016) …………………… 11, 18

*United States v. Jeffries*, 908 F.2d 1520 (1990) …………………………….... 26

*United States v. Rubbo*, 396 F.3d 1330 (11th Cir. 2005) ………………….....  25

*Williams v. Best Buy Co.*, 269 F.3d 1316 (11th Cir. 2001) ………………….. 14

## <u>Statutes</u>

28 U.S.C. §1332 …………………………………………………….. 12

28 U.S.C. §1653 ………………………………………………….  15

O.C.G.A. §9-11-56 ………………………………………………  24

O.C.G.A. §17-3-3 ……………………………………………….. 29

O.C.G.A. §17-8-3 ……………………………………………….  28

O.C.G.A. §51-7-40 ……………………………………………… 11

O.C.G.A. §51-1-13 ……………………………………………… 11

## <u>Rules</u>

Ga.R.Super.Ct. 33.3 ………………………………………………….. 25

Ga.R.Super.Ct. 33.8 ………………………………………………….. 27

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant filed a complaint against Walmart Corporation, et al., in the United States District Court for the Northern District of Georgia on October 14, 2021. [ECF Doc. 1]. Because Appellant and Defendants are citizens of different states and the amount in controversy exceeds $75,000, the district court had diversity jurisdiction under 28 U.S.C. 1332.

The district court entered judgment on July 27, 2023, granting Appellee's Motion for Summary Judgment. Appellant timely noticed an appeal on August 25, 2023. This Court has jurisdiction under 28 U.S.C. §1291.

## STATEMENT OF THE ISSUES

1.　Whether the district court erred by asserting that it lacked diversity jurisdiction to adjudicate one of Appellant's two interrelated and exclusive State based claims.

2.　Whether the district court erred to the extent it determined that it had federal question jurisdiction under 28 U.S.C. §1331.

3.　Whether the district court erred in finding that the dismissal of the criminal charge underlying Appellant's State based claim of malicious prosecution

was made pursuant to a plea agreement and that Appellee's were entitled to Summary judgment as a matter of law.

## STATEMENT OF THE CASE

### A.  Events Giving Rise to the Complaint

On June 20, 2020, Plaintiff-Appellant (hereinafter referred to as "Mueller" or "Appellant") entered a Walmart Supercenter in Duluth, Georgia, to deliver an eBay Order for shipment at a FedEx location within the store. *Plaintiff's Memo in Support of Opp. to MSJ*, p. 2 [ECF Doc. 82-1].  When FedEx informed Mueller that it did not have in stock the size of box he sought,  he proceeded to purchase a box (and other items) from Walmart.  While in the store, Mueller was approached by two Walmart Loss Prevention personnel who accused Plaintiff of secreting merchandise within the packaging he brought into the store. *Id.* Without consent, Mueller's packaging was searched in a rear area of the store, at which time a verbal altercation ensued, and Mueller was assaulted by both Loss Prevention employees. *Id*. at 2-3.

After the altercation, Mueller retook possession of  his belongings and after paying for the Walmart merchandise at the front of the store, he was once again approached by the two loss prevention employees who attempted to have Mueller accompany them into a side room. *Id*. at 3.  Mueller refused to join the employees and  ran back into the store, leaving both his property and purchased merchandise,

before exiting through a rear entrance. *Id*.   Mueller then attempted to approach his vehicle, at which time law enforcement officers attempted to approach him. *Id*. Mueller fled, and was ultimately apprehended by members of the Duluth Police Department who had been dispatched to the store in response to Walmart's allegation of shoplifting.

Once in custody, Duluth Police refused to arrest Mueller on shoplifting charges for want of evidence.  Instead, Mueller was arrested on  an Obstruction charge based upon his refusal to "stop" when commanded.  However, Walmart subsequently swore out a complaint for Felony shoplifting against Mueller and he was prosecuted on both charges in the Gwinnett County Superior Court.  *Id*. at 4.

### 1. *The Georgia State Prosecution*

During the pendency of the prosecution, the State made three offers to Mueller in resolution of the two charges. The State first indicated that should Mueller enter a guilty plea to both the Felony shoplifting charge– which carried a statutory ten-year maximum term of imprisonment– and the misdemeanor obstruction charge, it would agree to a one-year incarcerative sentence to be followed by nine years supervision.  Mueller rejected that offer. *Id*. at 17.

On January 7, 2022, the State next provided Mueller with an offer in open court of ten years' probation with no prison term if he entered a plea to both Counts. The State further informed the Court that if the case instead proceeded to trial  it

would file a recidivist notice, such that if Mueller were found guilty of the shoplifting offense alone, he would be mandated under Georgia law to serve up to a ten-year prison term, with no parole eligibility.   Mueller rejected this offer, and a firm trial date of February 7, 2022, was set by the Court. *Id*. at 17-18.

The State's third and final offer was made on the day of trial and diminished to a sentencing recommendation of one-year probation if Mueller entered a *nolo contendere plea* to the misdemeanor charge.  The State, *sua sponte*, and apart from any agreement with Mueller entered a *nolle prosequi* to the felony shoplifting charge.  *Id*. at 18.

Although no written plea agreement accompanied Mueller's entry of his *nolo contendere* plea to the misdemeanor obstruction charge, the Court restated its terms in open Court: [T]he State has made a recommendation of 12 months of probation, $300 fine, 40 hours of community service, for you to have no contact and stay away from Walmart, all Walmarts [sic] in Gwinnett County, and pay a probation supervision fee. 2/7/22 Sentencing Tr. at p.4 [ECF Doc. 76-25].

In response, Mueller acknowledged the terms of the agreement specified by the Court, that the Court was not bound by the State's recommendation, and that should the Court impose a sentence in excess of the recommendation, he could withdraw his plea.  Mueller accepted these terms and the Court imposed sentence accordingly.  Mueller successfully completed his sentence on February 8, 2023.

**B.** *District Court Proceedings*

Mueller filed his complaint with the District Court on October 14, 2021,[1] in which he substantially asserted that Walmart had falsely filed criminal charges against him and committed assault upon his person. [ECF Doc. 1]. Mueller alleged several jurisdictional predicates, although the Complaint did not specifically cite 28 U.S.C. §1332, the Diversity statute, although the parties understood that all the parties were diverse. 6/13/22 Deposition of T. Mueller, p. 128 (15-17). [ECF Doc. 53].

Discovery was conducted by the parties, during which several depositions were noticed. [ECF Docs 49 thru 54]. At the conclusion of the Rule 26 discovery process, Defendants moved for Summary Judgment on Mueller's State based claims, and further posited that a claim ostensibly raised by Mueller under 42 USC §§1981 and 1982, should also be dismissed as a matter of law. Indeed, the sum of Defendants' motion was that "[a]ll of [Mueller's] claims are deficient as a matter of law," and Defendants did not proffer arguments on the merits of Mueller's malicious prosecution claim.

---

[1]    Although the Complaint was filed prior to disposition of the State charges, such that Mueller's claim of malicious prosecution could not have legally accrued, Defendants did not move to dismiss under Federal Rule 12(b)(6).

First, in arguing that Mueller's State based claim of malicious prosecution should be dismissed, Defendants substantially asserted that Mueller's *nolo contendere* plea to the obstruction of justice offense was entered pursuant to a plea agreement which encompassed the dismissal of the shoplifting charge. Therefore, because Georgia law, as Defendants argued, precludes a viable claim of malicious prosecution when disposition of the offense underlying the tort obtains as a result of a guilty finding, or is otherwise dismissed pursuant to a "bargain," Mueller was not entitled to relief on the claim.

Defendants next argued that another facet of Georgia law forestalled Mueller's assault claim because, as the Defendants characterized the record, Mueller had provided "two conflicting versions of the alleged assault." SJM at 17. (ECF Doc. 76-1). In making this argument, Defendants argued before the District Court that *Prophecy v. Rossignol*, 256 Ga. 27 (1985), precluded relief because a non-movant's self-contradictory testimony must be construed against him on summary judgment when "the favorable portion of a party's self-contradictory testimony is the only evidence of his right to recover." SJM at 18 (ECF Doc. 76-1).

Finally, Defendants asserted an argument framed upon a factual landscape not contained in Mueller's complaint, that federal law, namely *Lopez v. Target Corp.,* 676 F.3d 1230, (2012), precludes relief where a "plaintiff successfully completes a transaction and acquires a property interest." SJM at 11. In this

connection, Defendants reasoned that because Mueller was allowed to make his purchases on the dates referenced in the Complaint, he has "no viable cause of action under sections 1981 or 1982." *Id*.

In response to Defendants arguments, Mueller principally argued in the District Court that Defendants were not entitled to relief on his malicious prosecution claim because his *nolo contendere* plea to the obstruction offense was not entered pursuant to an agreement that encompassed the dismissal of the felony shoplifting charge. Rather, the State entered a *nolle prosequi* on the charge *sua sponte*. Because proper characterization of the dismissal would not entitle Defendants to summary judgment, Mueller asserted that notwithstanding Defendants failure to address the merits of the claim, there remained, at the very least, a genuine dispute as to the material facts surrounding the malicious prosecution tort.

Mueller also argued that Defendants were not entitled to relief under Rule 56 with respect to the assault claim, as their reliance on *Prophecy v. Rossignol* was misplaced. Specifically, Mueller pointed out to the District Court: that (i) he did not make two conflicting statements regarding the assault; (ii) any asserted statements referenced by Defendants were not made under oath, as required by *Prophecy*, and (iii) the statements were not the only evidence of an assault, as Defendants themselves had attached to their Summary Judgment motion copies of text messages by Brandon Burston acknowledging the assault.

Finally, Mueller did not address Defendants arguments relating to the purported Section 1981 and 1982 claims.

The District Court settled the Defendants' motion for summary judgment in three substantive forms relevant to the appeal. First, the Court adjudicated the claim by concluding that although Mueller did not directly plead guilty to the shoplifting offense underlying his State-based malicious prosecution claim, the dismissal of the charge was nonetheless occasioned by a plea agreement such that Defendants were entitled to Summary relief on the claim.

As to Mueller's State-based assault claim, the Court took a different approach by concluding that it did not have Diversity jurisdiction to adjudicate the claim on the merits. Order, p. 20, 7/26/2023 [ECF Doc. 95]. In support of its finding, the District Court exclusively relied on Mueller's October, 2021, Complaint in which he asserted that "at all times relevant to the [June, 2020 and October, 2020] events described herein [Mueller] was a domiciled resident in the Northern District of Georgia." Complaint, Paragraph 3 (ECF Doc. 1). Proceeding upon that finding, the District Court refused to exercise Supplemental jurisdiction, and dismissed the claim without prejudice to refiling in the appropriate State forum.

In sum, the District Court found in favor of Defendants in all respects to their Motion for Summary Judgment, awarded them costs, and dismissed the action. Mueller timely appealed.

## SUMMARY OF THE ARGUMENT

This appeal begins with the antecedent question of what precisely is the jurisdictional predicate upon which the District Court proceeded to adjudicate the claims raised in the Complaint.  At the answer's threshold is the observation that the District Court's summary judgment order does not set forth  the jurisdictional landscape upon which it proceeded to dispose of Mueller's two interrelated and exclusive Georgia state-based claims, but because the court proceeds to dispose of the two claims on separate jurisdiction grounds that cannot be reconciled,  resolution of the question is central to the appeal as a threshold matter.  In conclusion of the argument, Appellant asserts that the District Court committed plain error by dismissing one state-based claim for want of jurisdiction, while adjudicating the merits of the other.

The Court also erred in its assumption that it had subject-matter jurisdiction under the federal question statute, 28 USC 1331, in a situation where, as here, the factual predicate giving rise to the Court's asserted jurisdictional acquisition was framed not by the Complaint but, rather, by Defendants.  Subject matter jurisdiction in this case obtained exclusively under the diversity statute, 28 USC 1332.

Notwithstanding the Court's dichotomous jurisdictional determinations, the District Court erred in its adjudication on the merits of Appellant's malicious prosecution claim by finding that the dismissal of the criminal offense giving rise to the claim obtained as a result of a bargain with the prosecution. In the absence of a written plea agreement in the record that would conclusively establish such a fact, if true, the Court instead relied upon subjective impressions to mitigate Appellant's arguments and did not otherwise consider objective indicia in both the record and the Georgia statutory scheme supporting Appellant's claim that dismissal of the substantive shoplifting charge was not part and parcel of any plea agreement.

Both the jurisdiction defect attending dismissal of Appellant' assault claim, and the court's erroneous conclusion relating to the disposition of the state prosecution militate in favor of concluding that Summary judgment in favor of Defendants was inappropriate such that the matter should be remanded to the District Court for further proceedings consistent with these arguments.

I.    **THE DISTRICT COURT ERRED BY ASSERTING THAT IT LACKED DIVERSITY JURISDICTION TO ADJUDICATE ONE OF APPELLANT'S TWO INTERRELATED AND EXCLUSIVE STATE BASED CLAIMS**

It cannot be that a court confronted with a Complaint containing two exclusively state-based claims, both of which are predicated upon facts occurring within the same venue, on the same date, and further involve identical parties, can

assert jurisdiction to adjudicate  the merits of the first claim while maintaining that it has no jurisdiction to resolve the merits of the second on the basis that the parties are not diverse.  This is the framework within which Appellant asserts that the District Court erred in dismissing his state-based assault claim while adjudicating the merits of his state-based malicious prosecution claim in favor of Defendants' motion for summary judgment.  Inasmuch as diversity extends to both claims, this Court should reverse that portion of the Court's summary judgment that dismisses Appellant's assault claim.

### *a.  Standard of review*

A  district court's subject matter jurisdiction is a question of law that the Eleventh Circuit reviews  *de novo*.  *United States v. Iguaran*, 821 F.3d 1335, 1336 (11th Cir. 2016).  Where, as here, a district court has made jurisdictional fact findings of the parties' citizenships, those findings are reviewed for clear error.  *Ambrosia Coal & Constr. Co. v. Pages Morales,* 482 F.3d 1309, 1313 (11th Cir. 2007). A finding is clearly erroneous if the record lacks substantial evidence to support it.  *Arthur v. Allen,* 452 F.3d 1234, 1243 (11th Cir.2006).

### ARGUMENT

The Complaint filed with the District Court sets forth a factual landscape on which two exclusive State based claims are raised: malicious prosecution, a tort for which Georgia has created a right of action, O.C.G.A. §51-7-40; and assault and

battery, for which Georgia has also made actionable as a civil tort. O.C.G.A. §51-1-13. Because neither of these claims are of a federal character,  the District Court would only have subject-matter jurisdiction to adjudicate these claims, in the first instance, if diversity of citizenship existed as to each party.

The requirements for diversity of citizenship jurisdiction are set forth in 28 U.S.C. § 1332, which provides that federal district courts have original jurisdiction "of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C.A. §1332(a)(1).  Further, "complete diversity" must exist for jurisdiction to be conferred upon the court; that is, every plaintiff must be diverse from every defendant. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

Admittedly, even by the most liberal reading of the Complaint below, Appellant does not plead diversity, such that the District Court's dismissal of the state-based assault claim on that basis might appear, on its face, to be correct.  But, on the other hand, the District Court did adjudicate the state-based malicious prosecution claim, ostensibly finding facts elsewhere in the record sufficient for the Court to invoke subject-matter jurisdiction under 28 USC 1332.  But, because the District Court does not state the provenance of that jurisdiction with respect to its adjudication on the merits of Appellant's malicious prosecution claim, the only

alternate conclusion, assuming the ultimate correctness of the Court's jurisdictional determination on the assault claim, is that the District Court erred in its jurisdictional approach to the malicious prosecution claim.

Despite the approach taken, these considerations do not exist in a vacuum and are only intended to be illustrative of the problem attending the disparate jurisdictional paths taken by the District Court in disposition of Appellant's two state-based claims. That Appellant did not plead diversity in his complaint does not turn upside down his argument that the court improperly dismissed the assault claim, or otherwise give rise to the conclusion that the District Court was without subject matter jurisdiction to adjudicate either claim.

Indeed, the failure to initially plead or allege the elements necessary to make out a showing of diversity does not in and of itself deprive a court of jurisdiction. *Kaufman v. W. Union Tel. Co.*, 224 F.2d 723, 725 (5th Cir. 1955) ("[I]f jurisdiction actually existed from the facts at the time when the complaint was filed, even though not properly pleaded, … the formal defect in the pleadings did not deprive the [c]ourt of jurisdiction at the time when the action was filed, if such defect was later corrected").

Consequently, although Appellant's complaint was defective in its pleading with respect to diversity, "the whole record … may be looked to, for the purpose of curing a defective averment of citizenship, where jurisdiction in a Federal court is

asserted to depend upon diversity of citizenship, and if the requisite citizenship, is anywhere expressly averred in the record, or facts are therein stated which in legal intendment constitute such allegation, that is sufficient." *Sun Printing Publishing Assn. v. Edwards*, 194 U.S. 377, 24 S. Ct. 696 (1904).  Accord, *Hedge Capital Investments Ltd. v. Sustainable Growth Group Holdings LLC,* 593 F. App'x 937 (11th Cir. 2014) ("If the evidence in the record were clear [regarding citizenship], we could cure the technical defect by allowing an amendment, 28 U.S.C. §1653…."); *Travaglio v. Am. Express Co.,* 735 F.3d 1266, 1268 (11th Cir. 2013) ("[W]e need not vacate a decision on the merits if the evidence submitted during the course of the proceedings cures any jurisdictional pleading deficiency by convincing us of the parties' citizenship"); *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1342, n.12 (same) (11th Cir. 2011); *Williams v. Best Buy Co.*, 269 F.3d 1316, 1320 (11th Cir. 2001) ("Where the pleadings are inadequate, we may review the record to find evidence that diversity jurisdiction exists").

Thus, when looking to the record at the time the District Court dismissed Appellant's assault claim at the Summary Judgment stage, there existed sufficient indicia of diversity to dissuade  any reliance by the District Court on the Complaint's averment that "Plaintiff…, at all times relevant to the events described herein was a domiciled *resident* in the Northern District of Georgia." Complaint, ¶ 3 [ECF Doc. 1].  To be sure, and putting to the side, momentarily, the question of whether such

statement was even sufficient to answer the diversity question in the first instance, Defendants' Motion for Summary Judgment included Appellant's sworn deposition testimony in which opposing counsel's inquiry into Appellant's citizenship was dispositive of the issue: ("[Q]: **You are currently a *citizen* of the state of New York?** A. ***That is correct***").  Mueller Deposition Transcript, June 13, 2022,  p. 128 (15-17)(***emphasis added***) [ECF Doc. 53].

Although Appellant's sworn depositional testimony as to his diversity of citizenship is plain and should serve as both the start and end of the matter for purposes of curing the procedural defect, 28 U.S.C. §1653 provides another mechanism to assert diversity where the record may not be so clear: "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."  Congress enacted §1653 "to broadly permit amendment to avoid dismissal on technical grounds," *Moore v. Coats Company*, 270 F.2d 410 (3d Cir. 1959), and the Eleventh Circuit construes this provision as "liberally" permitting a party who has made defective diversity allegations to amend the pleadings even as late as on appeal to remedy incorrect statements about extant jurisdiction. *McArthur v. Kerzner Int'l Bahamas Ltd.*, 607 F. App'x 845, 846 n.1 (11th Cir. 2015) (unpublished) ("[W]hen the pleadings' allegations of citizenship and jurisdiction are insufficient, a party may amend them in this court"); *Molinos Valle del Cibao*, *supra*, 633 F.3d at 1342, n.12 (construing §1653 liberally).

Against the backdrop of Section 1653, and notwithstanding the clarity of the record, Appellant has moved both this Court and the Court below for leave to amend the pleadings to reflect not only diversity of citizenship as to each party, but also to cure any jurisdictional defect that *might* owe to Appellant's omission in specifying the exact amount in controversy. USCA 11, Docket No.: 23-12854 [ECF Doc. 16]; USDC Docket No.: 21-cv-0473-VMC [ECF Doc. ___ ].

Appellant's diversity, not evident by the Complaint, is established by the record, and gives rise to the conclusion that the District Court erred in its determination that diversity did not exist. Moreover, that portion of the record cited by the District Court in support of this factual finding, as suggested earlier, was not conclusive to the issue. Indeed, the District Court merely references Appellant's "residency" status at the time of the events giving rise to the Complaint nearly sixteen months prior to filing the Complaint.

Of course, a party's residency is not his citizenship, and the measure of citizenship obtains not when the underlying events occurred but, rather, when the Complaint is filed. *Taylor v. Appleton,* 30 F.3d 1365, 1367 (11th Cir. 1994) ("Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person"). On that basis, the District Court was confronted with nothing in the Complaint that spoke to diversity

jurisdiction, and it was thus error for the District Court to address the matter *sua sponte*, without giving the parties an opportunity to first address the issue.

As the Eleventh Circuit has stated under similar circumstances, by "ruling that diversity jurisdiction was lacking, the district court committed two errors, one procedural and one substantive. Each one provides an independent basis for reversal. First, the district court failed to give the plaintiff[ ] notice of its intent to *sua sponte* address the matter of diversity jurisdiction.  A federal court has an independent duty to ensure that it has subject-matter jurisdiction. And that means that it can take up the issue of such jurisdiction on its own. But when it does so, it must give the parties notice and an opportunity to be heard. Its failure to do so here, therefore, was an error. *McIntosh v. Royal Caribbean Cruises, Ltd.*, 5 F.4th 1309 (11th Cir. 2021)(internal citations omitted);  See, also, *Day v. McDonough*, 547 U.S. 198, 210 (2006)("before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions").

In conclusion, because the record sufficiently establishes diversity of the parties, the Court should reverse that portion of the lower Court's summary judgment Order dismissing Appellant's assault claim and remand to the District Court for further proceedings consistent with Summary Judgment standards set forth in the Federal Rules.

**II.    THE DISTRICT COURT ERRED TO THE EXTENT IT DETERMINED THAT IT HAD FEDERAL QUESTION JURISDICTION UNDER 28 U.S.C. §1331**

### ARGUMENT

Appellant next turns, briefly, to what appears to be the District Court's application of federal question jurisdiction.[2]    Because Appellant asserts that the factual allegations specifically set forth in the Complaint give rise to exclusive state-based claims, any reliance by the District Court on federal question jurisdiction under Section 1331 is error.    As with the malicious prosecution claim, there is a similar absence of any reference to the contours of the Court's jurisdiction in what appears to be its acceptance and adjudication of federal question jurisdiction.[3]

Although Appellant's complaint alleged the proverbial "kitchen sink" of federal statutory predicates giving rise to federal subject-matter jurisdiction (to wit.,

---

[2]    The district court's subject matter jurisdiction, as previously stated, is a question of law that the Eleventh Circuit reviews *de novo*. *United States v. Iguaran*, 821 F.3d 1335, 1336 (11th Cir. 2016).

[3]    This appeal assumes that the Court exercised some type of federal question jurisdiction, without it so stating, based on two factors.  First, the Court specifically states that it declined to exercise Supplemental jurisdiction over Appellant's state-based assault claim for want of diversity jurisdiction and then declined to exercise supplemental jurisdiction over the claim under 28 USC §1367.  Because Supplemental jurisdiction can only be exercised if the Court otherwise has jurisdiction to adjudicate an existing claim, and having already disavowed Diversity jurisdiction, the only other source of jurisdiction– at least in the context of this case– that would allow the court discretion to exercise or decline supplemental jurisdiction is 28 USC §1331.  Second, the District Court dismissed two claims that Defendants factually crafted to arise under Sections 1981 and 1982 of Title 42, United States Code.  The Court does not address the merits of these two claims, but proceeds to dismiss them, ostensibly with prejudice, at the conclusion of its Order.

28 U.S.C. §§ 1331, 1343 1367(a), 2001, 2002, F.R.Cv.P. 57, 42 U.S.C. §§ 1981, 1982, 1983, 1988, and 2000), the bare recitations were not otherwise supported by any of the factual allegations  detailed in the Complaint. Thus, standing alone, the inclusion of these statutory allegations within the complaint, devoid of factual content that would allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, did not give the court subject matter jurisdiction under 28 USC 1331.

Additionally, Appellant styled two causes of action under 42 USC 1981 and 1982, which also were "naked assertions devoid of further factual enhancement," mere "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), that failed to state a claim, or otherwise invoke federal question jurisdiction.  See, e.g., *Hudson Ins. Co. v. Am. Elec. Corp.*, 957 F.2d 826, 828 (11th Cir. 1992)("we do not look to the face of the declaratory judgment complaint in order to determine the presence of a federal question").  Notwithstanding, Defendants attached a factual narrative to the Section 1981 and 1982 claims that was neither stated in, nor supported by the factual content of the Complaint, but which gave the facial appearance of federal question jurisdiction where it was otherwise lacking.  Specifically, Defendants asserted that Appellant claimed that he was not able to "make purchases" on June 20, 2020, and October 31, 2020.  But upon close examination of the factual allegations delineated

in the Complaint, the Defendants' proffer is not what the Complaint alleges.  Indeed, the Complaint rebuffs Defendants' narrative by affirmatively stating that on both June 20, 2020, and October 31, 2020, "Plaintiff ***did make a purchase*** from the WALMART SUPERCENTER using his debit/credit card."  Complaint, ¶¶ 13 and 36 (**emphasis added**) [ECF Doc. 1].  It is thus not plausible that the factual allegations of the Complaint could be read to support a claim under Sections 1981 and 1982, either upon "naked assertions," or upon the narrative created exclusively by Defendants, and ostensibly adopted by the lower Court.

Moreover, although the District Court did not specifically address the merits of these two causes of action, the Court nonetheless dismissed them under Rule 56 in broad language that states only that "[it is] FURTHER ORDERED that Defendants' Motion for Summary Judgment (Doc. 76) is GRANTED IN PART as to Mr. Mueller's claims for false arrest, false imprisonment, and malicious prosecution, negligence, negligent hiring, **42 U.S.C. §§ 1981, 1982**, and 1983." Order, 7/26/2023, p. 21 [ECF Doc. 95].

Appellant asserts that because the Complaint did not create a federal question under Section 1331, the Court was without subject-matter jurisdiction to adjudicate the merits of the Section 1981 and 1982 claims, or any other federal statutory provision cited in the Complaint.  Accordingly, this Court should vacate that portion of the District Court's Summary Judgment Order asserting federal question

jurisdiction under Section 1331, or otherwise remand to the District Court for clarification of the jurisdictional predicates underlying the Court's disposition of Defendants' summary judgment motion.

**III. THE DISTRICT COURT ERRED IN FINDING THAT THE DISMISSAL OF THE CRIMINAL CHARGE UNDERLYING APPELLANT'S STATE BASED CLAIM OF MALICIOUS PROSECUTION WAS MADE PURSUANT TO A PLEA AGREEMENT AND THAT APPELLEE'S WERE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW**

Appellant's final argument relates to the District Court's factual finding that the prosecution's decision to enter a *nolle prosequi* to the shoplifting offense underlying the malicious prosecution claim was a result of a plea bargain between the parties to the State Court proceedings. This argument is narrower than, and distinct from the well-established precedent, not here challenged on appeal, that a charged offense dismissed as a result of an agreement between a criminal defendant and the prosecution will not support a malicious prosecution claim under Georgia law.

a. ***Standard of Review***

The Eleventh Circuit reviews a district court's grant of summary judgment *de novo*. *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010). Any review must necessarily begin with the admonition set forth in Rule 56 that summary

judgment is appropriate only if there is "no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. *Talavera v. School Bd. of Palm Beach City*, 129 F.3d 1214, 1216 (11th Cir. 1997) (quoting *Scala v. City of Winter Park*, 116 F.3d 1396, 1398 (11th Cir. 1997)). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, the issue of material fact required by Rule 56 is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id*. Therefore, at the summary judgment stage the function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Id*.

Finally, in determining whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law, "the [c]ourt must view all of the evidence and draw all reasonable inferences in the light most favorable to the non-moving party." *Id*. Accord, *Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306 (11th Cir. 2013).

## ARGUMENT

Appellant argues that the district court resolved the issue of whether or not dismissal of the shoplifting offense terminated in a manner favorable to Appellant in derogation of well settled summary judgment standards. The court's determination, moreover, gave existence to the dismissal of the shoplifting charge based upon a "compromise and agreement of the parties" that is neither countenanced by the historical record nor, in the context of the State court proceedings, weighted by necessary consideration of the procedural posture attending a *nolle prosequi* under Georgia law.

The existence of a written plea agreement, which *might* ordinarily be dispositive of the issue, does not exist and thus could not provide guidance to the District Court in its apparent resolution of the issue. Instead, the exclusive basis of the court's determination rested upon the conclusory observation that "[Plaintiff's] plea of *nolo contendere* to a separate charge in the same charging instrument on the same day constitutes evidence that a compromise existed, and his own testimony does not create a dispute of fact as to this issue." [4] Order, at p. 17. [ECF Doc. 95]

---

[4]    The court characterized Appellant's testimony in dispute of a compromise as "self-serving," and relied on *Sherrill v. Stockel*, 557 S.E.2d 8, 11 (Ga.Ct.App. 2001), as a basis for excluding it from consideration in the summary judgment context. However, *Stockel* is inapposite because, as the district court pointed out, the statements in that case were "not based on personal knowledge." Indeed, in Stockel, the affiant's testimony was based on conversations between his attorney and a third party, to which the affiant was not a party. Thus, because the affidavit was based on "hearsay evidence, unsupported conclusions, and the like, [they] must be stricken or

Putting to the side the fact that the Court's very subjective statement hardly constitutes evidence sufficient to dispositively conclude that dismissal of the shoplifting charge was part of a plea agreement, or otherwise signals under the heightened summary judgment standards that no genuine issue as to any material fact exists with respect thereto, resolution of the issue more appropriately devolves upon the record.

To begin, Appellant's two underlying claims can both be true at the same time. Indeed, there is no legal proposition that would negate Appellant's contention that the prosecution dismissed the shoplifting charge sua sponte *and* that Appellant did not plead guilty pursuant to a plea agreement in which dismissal of the shoplifting charge was an element. Neither claim is mutually exclusive of the other but rather, the truth of one claim in this context necessarily informs the fact of the other. On

---

eliminated from consideration in a motion for summary judgment." *Butler v. Bolton Road Partners*, 222 Ga.App. 791, 794, 476 S.E.2d 265 (1996). Appellant's Declaration, on the other hand, was based on personal knowledge and stated that "It was my express understanding through counsel that I was not [sic] entering a *nolo contendere* plea exclusively in exchange for a sentencing recommendation, and that the District Attorney's Office unilaterally had decided not pursue the Felony shoplifting case at that time because they were not prepared for trial which was scheduled the same day (2/7/2022)." Mueller Decl. ¶ 18 [ECF Doc. 82]. There is nothing in Appellant's statement that was based on hearsay. Appellant's understanding was based on personal knowledge stemming from conversations between him and his lawyer. Thus, Stockel's affidavit was insufficient as a matter of law because affidavits supporting and opposing summary judgment must be made on personal knowledge and must set forth facts as would be admissible in the evidence. O.C.G.A. 9-11-56(e). "[A]ll hearsay evidence, unsupported conclusions, and the like, must be stricken or eliminated from consideration in a motion for summary judgment." *Butler v. Bolton Road Partners*, 222 Ga. App. 791 (1996). A self-serving, conclusory affidavit not supported by fact or circumstances is insufficient to raise a genuine issue of material fact. *Brooks v. Boykin*, 194 Ga.App. 854 (1990). Hearsay considerations did not apply to Appellant's Declaration.

the other hand, the mere existence of a plea agreement does not necessarily mean that every action undertaken by a party to an agreement was included within its terms.

At the core of the dispute is, of course, whether or not dismissal of the shoplifting charge was conditioned upon Appellant's entry of his *nolo contendere* plea to the obstruction charge, whereby it is undisputed that the State recommended a specific sentence.    Under Georgia law, both the dismissal of charges and sentencing recommendations are permissible terms of an agreement.    See, Ga.Sup.Ct.R. 33.3 ("[t]he prosecuting attorney…may agree to one or more of the following … : (1) to make or not oppose favorable sentencing recommendations … (2) to seek or not to oppose dismissal of the offense charged… ; or  (3) to seek or not to oppose dismissal of other charges").

A determination as to which of these terms existed, if any, necessarily begins with an examination of the agreement.   Because "[a] plea agreement is, in essence, a contract between a defendant and the State …. [the] rules of contract often provide the appropriate framework" within which to determine its terms.  *Syms v. State*, 331 Ga. App. 225, 770 S.E.2d 305 (Ga. Ct. App. 2015).  See also, *United States v. Rubbo*, 396 F.3d 1330, 1334 (11th Cir. 2005) (When interpreting plea agreements, the Eleventh Circuit  generally treats them like contracts and interprets them "in accord with what the parties intended.    Absent some

indication that the parties intended otherwise, we give the language of the agreement its ordinary and natural meaning"); *United States v. Jeffries*, 908 F.2d 1520, 1523 ("We resolve any ambiguities in the agreement against the government and in favor of the defendant").

So contextualized, identification of the terms of an agreement are easily identifiable by looking to the transcript of the State court proceedings where, as here, there exists no contemporaneous written plea agreement. Turning to the transcript, the prosecution states at the beginning of the hearing that "[Defendant] is here to plead … nolo to Count 2, obstruction of an officer. *State is dismissing Count 1*. Recommendation is four [sic] months' probation, a $39 fine, [and] 40 hours of community service." February 7, 2022, plea transcript, p. 1 (*emphasis added*). [ECF 76-25]. What the prosecution does not state, and what this portion of the transcript does not affirmatively indicate, is the posture of the State's "dismissal". That is, is the dismissal *sua sponte* or part of an agreement? The prosecution statement only confirms, at this juncture, that there is an agreement for a recommended sentence.

However, the Court provides clarity on the agreement's specific terms. Under the Georgia Rules of the Superior Court, the forum in which the proceedings occurred, judges are admonished not to accept a plea of guilty or *nolo contendere* from a defendant without, *inter alia* "[i]nforming the defendant on the record [ ] of

the terms of any negotiated plea." Ga.R.Super.Ct. 33.8(D)(1) (2015). In accordance

with this requirement, the Court stated, *in toto*:

> "And the State has made a recommendation of 12 months of probation, $300 fine, 40 hours of community service, for you to have no contact and stay away from Walmart, all Walmarts [sic] in Gwinnett County, and pay approbation supervision fee. You understand the Court is not bound in any way to the recommendation made by the State and could sentence you up to the maximum provided by law?"

Plea Transcript, supra., at 4. [ECF Doc. 76-25] The Court then inquires of Appellant

if he "understand[s] that when you have a negotiated plea, meaning that if the judge

exceeds the State recommendation, you have the right to withdraw your plea at that

time?" *Id*. At 5.

Conspicuously missing from the Court's recitation of the terms of the

"negotiated plea" is any mention that it was conditioned upon dismissal of the

shoplifting charge, as would have been required to be put on the record under the

Superior Court Rule. Moreover, when outlining the consequences should the Court

exceed the State's recommendation, there is no admonition by the Court to

Appellant that if he chooses to withdraw his guilty plea to the obstruction charge that

the shoplifting charge would be reinstated. Because there is no reason to believe

that the Court would fail to abide by the Rule's requirements to spread upon the

record the full terms of the agreement– especially when it complied with all other

aspects of the Rule when (i) determining the voluntariness of the plea, (ii)

determining a factual basis; and (3) informing the accused of his constitutional rights– there is absolutely no room to impute to the agreement terms not specifically stated by the Court, or to otherwise impugn the Court's adherence to its own Rules.

Although the record is clearly dispositive as to the non-existence of a plea agreement that included dismissal of the shoplifting charge, or at the very least is clear as to the existence of "a genuine issue as to a[ ] material fact" relating to the content of the plea agreement– so as to preclude summary judgment in favor of Defendants– there is still more that militates in favor of Appellant's argument.

In so stating, the historical and procedural effect of a *nolle prosequi* under Georgia law only adds to the conclusion that a "compromise" between the parties did not attach to the dismissal of the shoplifting charge.   Under Georgia's statutory scheme, a prosecuting attorney is authorized to enter a *nolle prosequi* with the consent of the court. O.C.G.A. §17-8-3. Consent need not be given by the defendant unless a jury has been impaneled and jeopardy has attached. *McIntyre v. State*, 189 Ga. App. 764, 377 S.E.2d 532 (1989).

When a *nolle prosequi* is entered, it is the State's formal action on its decision not to further prosecute one or more offenses against an accused.  *State v. McManus*, 224 Ga.App. 450, 451, 481 S.E.2d 243 (1997).   While it is well established that entry of a *nolle prosequi* terminates the pending prosecution,  *State v. Sheahan*, 217

Ga.App. 26, 28, 456 S.E.2d 615 (1995);  *State v. Davis*, 196 Ga.App. 785, 786, 397 S.E.2d 58 (1990), the State may choose to recharge the defendant within six-months of the filing of a *nolle prosequi* or at any time within the applicable statute of limitation for the charged offense, *Kyles v. State*, 254 Ga. 49, 50, 326 S.E.2d 216 (1985);  *People v. DeBlieck*, 181 Ill.App.3d 600, 130 Ill.Dec. 321, 537 N.E.2d 388, 392-393 (1989) (where an entry of *nolle prosequi* has been made in a case, State could either refile the complaint or move within term of court in which nolle prosequi order entered to vacate order, have original charge reinstated, and proceed on original charge); O.C.G.A. §17-3-3 (If an indictment is found within the time provided for in Code Section 17-3-1 or 17-3-2, or other applicable statute, and is quashed or a *nolle prosequi* entered, the limitation shall be extended six months from the time the first indictment is quashed or the *nolle prosequi* entered).

At least two considerations flow from the historical landscape of Georgia's *nolle prosequi* that further undermine the District Court's assumption that dismissal of the shoplifting charge was part and parcel of an agreement (again, not identified by the court) simply because it occurred on the same day as Appellant's *nolo contendere* plea.   First, Appellant's consent was not necessary to the prosecution's dismissal of the charge and the entry of the dismissal.  Second, the entry of the *nolle prosequi* didn't end the prosecution of the shoplifting charge against Appellant, but merely extended it by six months under Georgia's statute of limitations.  Although

highly improbable under the problematic circumstances of the prosecution, as discussed below, Appellant was still subject to being prosecuted on the shoplifting offense for six months following entry of the *nolle prosequi*.

In the abstract, it simply is not probable that a criminal defendant would enter into such an agreement where he was subject to reprosecution on the very charge being dismissed– the occurrence of which would render any consent to dismissal legally ineffective from a defendant's perspective.

Finally, it is equally important to consider that the State's decision to enter a *nolle prosequi* on the shoplifting charge, although not part of any agreement with the Appellant, did not occur in a vacuum.  The State clearly recognized that its case was over before its  prosecution even began.   As recounted earlier, pp. 3-4, there was a substantial diminution in the severity of penalties offered by the State in exchange for a guilty plea by Appellant to the shoplifting charge.  Indeed, so uncharacteristic was the State's final rejected offer of a probationary term that the Court had to inquire of the prosecution, "why are you offering probation when he has four felonies?  If this is -- he has four felonies why is it even a probation offer?"  To which the State responded: "Based on the facts of the case, Judge."  01/07/2022 Lafler-Frye Transcript, p. 3 [ECF Doc. 83, p. 14].

The "facts" that are problematic to the State's successful prosecution of the shoplifting offense, and which further gave rise to its decision to dismiss the shoplifting charge *sua sponte* are generously spread throughout the record and leave no room for doubt that Appellant had no reason to enter into an agreement with the prosecution to dismiss the shoplifting offense.

Central to the attenuation facing the prosecution was the John Bustamante's depositional testimony in which he unequivocally contradicted material portions of the events described under oath by two Walmart employees.  See, generally, Plaintiff's Memorandum in Support of Opposition to Defendants' Motion for Summary Judgment, pp. 5 thru 17, inclusive.   Deposition of Officer John Bustamante (8/8/22) [ECF Doc. 50].

Indeed, where Defendant Burston testified that he had reviewed and provided the Bustamante, the arresting officer, video surveillance showing Appellant shoplifting, the arresting offer stated that he was not given such evidence, as "I would've retained it and I would have placed [Appellant] under arrest myself because I had enough evidence to prosecute."  Bustamante Dep. at 44:3 – 45:4 [ECF Doc. 50].  The arresting officer also contradicted the testimony of another Walmart employee, Clifton Moore, who claimed that he had witnessed Appellant shoplift and had given the arresting officer a written statement.  Officer Bustamante stated "that

[Moore] was not a witness," and that Moore didn't provide him with a written statement.

Other problems with the prosecution's case were equally devastating. Walmart couldn't account for the whereabouts of any of the video surveillance that it claimed depicted Appellant shoplifting, even though they indicated that they had saved and stored the video. Clifton Moore, who indicated that he had witnessed Appellant shoplifting was contradicted by his colleague Brandon Burston who stated under oath that Moore was at lunch at the time Appellant was in the store. Officer Bustamante further corroborated that Burston stated he was the only one of the two present.

The State's case was further complicated by Burston's admission that although he had claimed Appellant had stolen more than a thousand dollars in merchandise and filed felony shoplifting charges on that bases, he nonetheless asserted under oath that he had only personally seen Appellant approach and conceal a single ink cartridge with a value of less than $50.00, and only "assumed" he had stolen everything else.

In sum, there simply was no evidence the State could proffer to a jury to obtain a conviction. The only two potential Walmart witnesses told materially conflicting versions of what allegedly occurred and could not agree on who was present and

who was at lunch. The employees couldn't further explain the allegedly missing video surveillance that police said they were never provided.

Officer Bustamante appropriately summed up the threshold problem with the State's case and his statement carried through to the end: "I've been a police officer for a long time and I was not going to violate the Plaintiff's rights by not having enough probable cause to place [Appellant] under arrest."

Coming full circle on the issue of whether Appellant's plea agreement, or negotiated plea with the State included the entry of the *nolle prosequi*, it cannot be gainsaid that, at the very least, there exists a genuine issue of material fact, and that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Accordingly, the District Court's grant of summary judgment on this issue should be reversed.

## **CONCLUSION**

Based upon the foregoing arguments and authorities, Appellant asserts (i) that the District Court erred in dismissing the state-based assault claims for want of diversity jurisdiction; and (ii) that the District Court incorrectly determined that Appellant entered into a Plea agreement in which dismissal of the shoplifting offense underlying his malicious prosecution claim was a component, or otherwise incorrectly concluded that "no genuine issue as to any material fact" relating to the contents of the plea agreement existed.

Accordingly, Appellant respectfully requests that this Court vacate those portions of the District Court's summary judgment motion in the respects herein requested, and for any further and other relief this Court deems just and appropriate.

DATED:  October 25, 2023

Respectfully submitted,

By: /s/ *T. Mueller*
       T. Mueller

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), as it contains 7,999 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Rule 32-4 of the Eleventh Circuit Rules.  This brief complies wit the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), as it has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-Point Times New Roman font.

By: /s/ *T. Mueller*
T. Mueller

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2023, I electronically filed the foregoing PRINCIPAL BRIEF OF APPELLANT with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system.  Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

By: /s/ *T. Mueller*

T. Mueller